UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Afiyfah Muhammad,<br>Darwin Wilson, and<br>Dominique Skinner,<br>*Collectively and on behalf of others similarly situated in the proposed FLSA and NYLL Collective Action*,<br>                                    Plaintiffs,<br><br>~against~<br><br>Alto Pharmacy LLC,<br>JOHN DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), JANE DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), ABC CORPORATIONS 1-1O (names being fictitious and used to connote unidentified entities responsible for this occurrence)<br>                                    Defendants. | Case Number: 23-11315<br>DEMAND FOR JURY TRIAL<br>**COMPLAINT** |

Plaintiff Afiyfah Muhammad ("Plaintiff Muhammad" or "Ms. Muhammad"), Darwin Wilson ("Plaintiff Wilson" "Mr. Wilson"), and Dominique Skinner ("Plaintiff Skinner," or "Mr. Skinner") on behalf of themselves and others similarly situated, by and through their attorney, Tyrone Blackburn Esq, upon their knowledge and belief, and as against Alto Pharmacy LLC ("Defendant Alto"), JOHN DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), JANE DOES 1-10 (names being fictitious and used to connote an unidentified person responsible for this occurrence), ABC CORPORATIONS 1-1O (names being fictitious and used to connote unidentified entities responsible for this occurrence) (Collectively, "Defendants") alleges as follows:

## NATURE OF ACTION

1. Plaintiffs bring this lawsuit seeking recovery, for themselves and all other similarly situated individuals, against Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201

*et seq.* ("FLSA"), and violations of Articles 6 and 19 of the New York State Labor Law ("NYLL") and their supporting New York State Department of Labor regulations.

2. Plaintiff seeks injunctive and declaratory relief and to recover unpaid overtime wages, spread-of-hours, liquidated and statutory damages, pre-and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, NYLL, NYCHRL, NYSHRL and the NYLL's Wage Theft Prevention Act ("WTPA").

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiff's claims under the NYLL pursuant to 28 U.S.C. § 1367(a).

4. This Court has personal jurisdiction over Defendants under and consistent with the Constitutional requirements of Due Process in that Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:
    a. The transaction of any business within the state;
    b. The making of any contract within the state;
    c. The commission of a tortious act within this District; and
    d. The ownership, use, or possession of any real estate in this state.

5. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because her claims arise under the FLSA.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because all events relevant to this action occurred in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

7. Damages far exceed the $75,000.00.

## PARTIES

**PLAINTIFF AFIYFAH MUHAMMAD**

8. Plaintiff Muhammad was employed as a delivery worker at Defendant's pharmacy, known as "Alto Pharmacy," from on or around September 2023 through and including present.

9. Plaintiff Muhammad was a non-managerial employee at Alto Pharmacy from on or around September 2023 through and including present.

10. At all relevant times, Plaintiff Muhammad has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

11. Plaintiff Muhammad was qualified for the position of delivery driver. According to Defendant's website, the following is required for a delivery driver:

    "Your Responsibilities:
    a. Arrive at our pharmacy on time for your shift to pick up packages before you begin your route, and
    b. Deliver prescriptions to patients while ensuring a great customer experience.

    Role Qualifications:
    c. You are at least 18 years of age,
    d. You are authorized to work in the United States,
    e. You have a valid Driver's License and have a good driving record,
    f. You have access to a reliable vehicle to make your deliveries,
    g. You have General Liability Insurance & Valid Motor Vehicle Registration,
    h. You have a track record of good attendance, positive attitude, and flexibility.
    i. You are flexible to drive within any of our delivery zones, and
    j. You are conversational in English and have a passion for customer service.

12. Here, Plaintiff Muhammad is over the age of 18; she is authorized to work in the United States; she has a valid driver's license with a good driving record; she has access to a reliable vehicle; she has motor vehicle insurance; she is punctual, flexible and fluent in English.

**PLAINTIFF DARWIN WILSON**

13. Plaintiff Wilson was employed as a delivery worker at Defendant's pharmacy, known as "Alto Pharmacy," from on or around January 2022 through and including July 2023.

14. Plaintiff Wilson was a non-managerial employee at Alto Pharmacy from on or around January 2022 through and including July 2023.

15. At all relevant times, Plaintiff Wilson has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

16. Plaintiff Wilson was qualified for the position of delivery driver. According to Defendant's website, the following is required for a delivery driver:

    "Your Responsibilities:

    a. Arrive at our pharmacy on time for your shift to pick up packages before you begin your route, and

    b. Deliver prescriptions to patients while ensuring a great customer experience.

Role Qualifications:

    c. You are at least 18 years of age,

    d. You are authorized to work in the United States,

    e. You have a valid Driver's License and have a good driving record,

    f. You have access to a reliable vehicle to make your deliveries,

    g. You have General Liability Insurance & Valid Motor Vehicle Registration,

    h. You have a track record of good attendance, positive attitude, and flexibility.

    i. You are flexible to drive within any of our delivery zones, and

    j. You are conversational in English and have a passion for customer service.

17. Here, Plaintiff Wilson is over the age of 18; he is authorized to work in the United States; he has a valid driver's license with a good driving record; he has access to a reliable vehicle; he has motor vehicle insurance; he is punctual, flexible and fluent in English.

**PLAINTIFF DOMINIQUE SKINNER**

18. Plaintiff Skinner was employed as a delivery worker at Defendant's pharmacy, known as "Alto Pharmacy," from on or around March 2022 through and including February 2023.

19. Plaintiff Skinner was a non-managerial employee at Alto Pharmacy from on or around March 2022 through and including February 2023.

20. At all relevant times, Plaintiff Skinner has been an employee within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

21. Plaintiff Skinner was qualified for the position of delivery driver. According to Defendant's website, the following is required for a delivery driver:

"Your Responsibilities:

    a. Arrive at our pharmacy on time for your shift to pick up packages before you begin your route, and

    b. Deliver prescriptions to patients while ensuring a great customer experience.

Role Qualifications:

    c. You are at least 18 years of age,

  d. You are authorized to work in the United States,
  e. You have a valid Driver's License and have a good driving record,
  f. You have access to a reliable vehicle to make your deliveries,
  g. You have General Liability Insurance & Valid Motor Vehicle Registration,
  h. You have a track record of good attendance, positive attitude, and flexibility.
  i. You are flexible to drive within any of our delivery zones, and
  j. You are conversational in English and have a passion for customer service.

22. Here, Plaintiff Skinner is over the age of 18; he is authorized to work in the United States; he has a valid driver's license with a good driving record; he has access to a reliable vehicle; he has motor vehicle insurance; he is punctual, flexible and fluent in English.

**DEFENDANT ALTO PHARMACY LLC**



23. Upon information and belief, Defendant Alto Pharmacy LLC maintains its principal place of business at 100 Park Ave, Frnt. E New York, NY 10017.

24. Defendant Alto Pharmacy LLC owns, operates and/or controls a coffee shop known as "Alto Pharmacy" located at 100 Park Ave, Frnt. E New York, NY 10017.

25. At all times relevant to this Complaint, Defendant Alto Pharmacy LLC (i) has had and continues to have employees engaged in commerce or in the production of goods and services for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and (ii) has had and continues to have an annual gross volume of sales of not less than $500,000.00.

26. At all times relevant to this Complaint, Defendant Alto Pharmacy LLC was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed employees, including the Plaintiffs.

27. At all times relevant to this Complaint, Defendant Alto Pharmacy LLC was and is an employer within the meaning of the 29 U.S.C. 201 *et seq.* and NYLL Section 190(3) and employed employees, including the Plaintiffs.

28. Defendant Alto Pharmacy LLC possessed substantial control over the Plaintiffs' (and other similarly situated employees) working conditions and the policies and practices with respect to the employment and compensation of the Plaintiffs and all similarly situated individuals referred to herein.

29. Defendant Alto Pharmacy LLC had the power to hire and fire the Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for the Plaintiffs' services.

## FACTUAL ALLEGATIONS

30. Plaintiff brings the First Claim for Relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. §216(b), on behalf of all non-exempt persons (including but not limited to delivery workers) employed by Defendant on or after the date that is six years before the filing of the Complaint in this case, as defined herein ("FLSA Collective Plaintiffs").

31. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan, and common policies, programs, practices, procedures, protocols, routines and rules willfully failing and refusing to pay them at the legally required overtime wage for all hours worked in excess of forty hours per work week. These claims of the Plaintiff are essentially the same as those of the FLSA Collective Plaintiffs.

32. The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to FLSA §16(b), 29 U.S.C. §216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For notice and others related to this action, their names and addresses are readily available from the Defendant.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

33. The Plaintiffs reserve the right to re-define the FLSA Collective Plaintiffs prior to notice or collective certification and thereafter, as necessary.

///

///

### *Plaintiff's Work Schedule and Pay*

34. Plaintiff worked for Defendants as delivery personnel from the dates previously listed above.
35. Plaintiff's job duties required them to deliver medicine and other pharmacy products to high-net-worth clients in New York City, who often spent a significant amount of money at Defendants Pharmacy each day.
36. For most of their employment, Plaintiffs worked the following schedule:
    a. Mondays they regularly worked from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made);
    b. Tuesdays they regularly worked from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made);
    c. Wednesdays they regularly worked from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made);
    d. Thursdays they worked promotional shifts from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made);
    e. Fridays they regularly worked from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made); and
    f. Saturdays they regularly worked from 8:00 a.m. (pick up time) to 9:00 p.m. (close or until the final delivery is made).
37. Plaintiffs often worked past 7:00 p.m. but did not get paid for this work.
38. Plaintiffs' shifts would oftentimes exceed 10 hours.
39. Further, when Plaintiffs worked more than 40 hours in a week, Defendant did not compensate them for their overtime.
40. Defendant also did not pay Plaintiffs any additional pay when they worked a shift of 10 hours or longer.
41. Plaintiffs also retained a large portion of Plaintiff's tips.

### *Defendants' Unlawful Misappropriation of Plaintiff's Tips*

42. Defendants misappropriated Plaintiff's tips in a variety of ways.
43. Plaintiffs primarily delivered medicine to rich, or wealth Manhattan clients who each day paid large amounts of tips to Plaintiffs.

44. Defendants unlawfully retained between 75% and 100% of Plaintiff's tips, allegedly to provide the tips to the pharmacy staff, and management who were not required to make deliveries during Plaintiff's shifts.

45. By making these misappropriations, Defendants deprived Plaintiffs of hundreds of thousands of dollars in tips each year.

46. Upon information and belief, Defendants never provided those tips to the pharmacy staff. Defendants' management and corporate headquarters pocketed the money.

47. In addition, Defendants' cashiers, managers and in pharmacy staff were not eligible to share tips with Plaintiffs under the NYLL.

48. In addition to taking the above-mentioned tips, Defendants' managers forced Plaintiffs to provide a portion of their tips to them.

49. If Plaintiff failed to do so, the managers would not process their payroll on time or accurately and they would not be paid timely.

50. Additionally, the managers would force Defendants to appear at work, not provide them with shifts, accuse them of refusing to work, force them to use a vacation day or sick day, and threaten to terminate them if they complained.

### *Notice and Recordkeeping Violations*

51. Defendants also did not provide Plaintiffs with an appropriate paystub. Rather the paystubs provided to Plaintiffs reflected the tipped minimum wage rate instead of the minimum wage, in violation of NYLL § 195.

52. Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

### *Defendant Retaliated Against Plaintiffs For Demanding Payment Of Their Tips and Overtime*

53. On or about May 2023, Plaintiff Wilson raised concerns to his manager and the instore leadership team concerning his missing tips and overtime pay. After making these inquiries, Plaintiff Wilson had his routes stripped, and he was abruptly terminated. Plaintiff Wilsons termination was an act of retaliation due to his engaging in a protected activity.

54. On or about October 2023, Plaintiff Muhammad raised concerns to her manager and the instore leadership team concerning her missing tips and overtime pay. From October 2023 to the date

of this filing Plaintiff Muhammad has seen her hours reduced, her routes stripped, and has been sent home after punching in for work.  These were all acts of retaliation due to Plaintiff Muhammad engaging in a protected activity.

*Defendant Retaliated Against Plaintiff Skinner For Engaging In A Protected Activity*

55. On or about February 2023 Plaintiff Skinner informed his manager and Defendants instore leadership team that he injured his hand and needed reasonable accommodations.
56. The leadership team responded with ridicule, and treated Plaintiff Skinners like he was a nuisance for informing them of his need for accommodations.
57. Plaintiff Skinners respectfully protested this treatment and requested the night off so he could rest his hand which he needed in order to ride his bicycle to make deliveries.
58. Instead of accommodating his request, or engaging in the interactive process, in an act of retaliation Defendant terminated Plaintiff Skinners employment.

## FIRST CAUSE OF ACTION
## FLSA CLAIM

59. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.
60. At all relevant times to this action, the Plaintiffs are covered, non-exempt employees within the meaning of the FLSA.
61. Defendant was required to pay the Plaintiffs one and one-half (1 1/2) times the regular rate at which the Plaintiffs were employed for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, et seq.
62. Defendant failed to pay the Plaintiffs the overtime wages to which they are entitled under the FLSA.
63. The Defendant willfully violated the FLSA by knowingly and intentionally failing to pay the Plaintiff's overtime wages.
64. Due to the Defendant's willful violations of the FLSA, the Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorney's fees, and cost of the action and pre-judgment and post-judgment interest.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

   a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

### SECOND CAUSE OF ACTION
### (NYLL – Unpaid Overtime Wages)

65. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.
66. Plaintiffs are covered, non-exempt employees within the meaning of the NYLL and supporting New York Department of Labor ("NYDOL") Regulations.
67. Under the NYLL and supporting NYDOL Regulations, the Defendant must pay the Plaintiffs one and one-half times the regular rate of pay, which shall not be less than the minimum wage, for all hours they worked in excess of forty.
68. Defendant failed to pay the Plaintiffs the overtime wages to which she is entitled under the NYLL.
69. Defendant willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff overtime wages at one and one-half times her agreed-upon regular rate of pay (i.e., $25.5 per hour).
70. Due to the Defendant's willful violations of the NYLL, the Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorney's fees, and cost of the action and pre-judgment and post-judgment interest.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

   a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

///

## THIRD CAUSE OF ACTION
### (NYLL WTPA– Failure to Provide Wage Notices)

71. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

72. The NYLL and the WTPA require employers to provide all employees with a written notice of wage rates at the time of hire.

73. In violation of NYLL §195 (1), Defendant failed to furnish to the Plaintiffs at the time of hiring, or whenever their rate(s) of pay changed, with a wage notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other, allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address, if different; the telephone number of the employer, and anything otherwise required by law.

74. Due to Defendant's violations of NYLL §195 (1), the Plaintiffs are entitled to recover their liquidated damages, reasonable attorney's fees, and cost and disbursement of the action, pursuant to the NYLL §198 (1-b).

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

    a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
    b. Punitive damages;
    c. Attorney fees, pre-and post-judgment interest, and cost of suit;
    d. Such other relief as the Court may deem just and appropriate under the circumstances.

## FOURTH CAUSE OF ACTION
### (Violation of the Wage Statement Provisions of the NYLL)

75. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

76. With each payment of wages, Defendant failed to provide the Plaintiffs with a statement listing each of the following: the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of

regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

77. As a result of Defendant's violation of the WTPA, the Plaintiffs are entitled to damages of at least $150 per week during which the violations occurred.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

   a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

## FIFTH CAUSE OF ACTION
### (NYLL – Spread-of-Hours Pay)

78. Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

79. Defendant willfully failed to pay Plaintiff additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Plaintiff's shifts spread over more than ten (10) hours.

80. By Defendant's failure to pay Plaintiff's spread-of-hours pay, Defendant willfully violated §650 *et seq.* of the NYLL and violated the supporting NYDOL regulations, including, but not limited to, 12 N.Y. C.R.R. §146-1.6.

81. Due to the Defendant's willful violations of the NYLL, the Plaintiff is entitled to recover an amount prescribed by statute, liquidated damages, reasonable attorney's fees, the cost of the action, and pre-judgment and post-judgment interest.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

   a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

///

## SIXTH CAUSE OF ACTION
### (Unlawful Retention of Tips under the NYLL against all Defendants)

82. Plaintiffs repeats and realleges all paragraphs above as though fully set forth herein.

83. NYLL § 196-d makes it illegal for an employer to "demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

84. On a daily basis, Defendants retained a portion of the tips that Plaintiffs received from Defendant's customers.

85. As a direct and proximate result of Defendants' unlawful conduct as set forth herein, Plaintiffs have sustained damages and seeks recovery of their tips in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 198 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

   a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
   b. Punitive damages;
   c. Attorney fees, pre-and post-judgment interest, and cost of suit;
   d. Such other relief as the Court may deem just and appropriate under the circumstances.

## SEVENTH CAUSE OF ACTION
### (Unpaid Spread-of-Hours under the NYLL against all Defendants)

86. Plaintiffs repeats and realleges all paragraphs above as though fully set forth herein.

87. Pursuant to 12 NYCRR 146-1.6 and 137-1.7, Defendants had an obligation to compensate Plaintiffs for one hour's pay at the minimum wage for each day they worked more than 10 hours.

88. Although Plaintiff regularly worked more than 10 hours in a day, Defendants failed to compensate Plaintiff for one hour's pay at the minimum wage.

89. As a direct and proximate result of Defendants' unlawful conduct as set forth herein, Plaintiffs have sustained damages and seeks recovery for spread-of-hours pay in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as

provided by NYLL § 663 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE,** Plaintiffs demand that judgment be entered against Defendant and seeks the following relief:

a. Compensatory damages for loss of wages (backpay and front pay) and lost benefits, emotional distress damages, including, but not limited to, pain, suffering, stress, humiliation, and mental anguish;
b. Punitive damages;
c. Attorney fees, pre-and post-judgment interest, and cost of suit;
d. Such other relief as the Court may deem just and appropriate under the circumstances.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiffs, on behalf of themselves and FLSA Collective Plaintiffs, respectfully request that this Court enter a judgment:

a) Authorizing the Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendant as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b) certification of this case as a collective action pursuant to the FLSA;

c) issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and her counsel to represent the FLSA Collective Plaintiffs;

d) declaring that Defendant violated the overtime wage provisions of the FLSA, the NYLL, and the NYDOL regulations;

e) declaring that Defendant violated the spread of hours provisions of the NYLL and the NYDOL regulations;

f) declaring that Defendant violated the notice statement pay provisions of the NYLL and WTPA;

g) awarding Plaintiff unpaid overtime wages;

h) awarding Plaintiff liquidated damages in an amount equal to the total amount of wages found to be due;

i) awarding Plaintiff statutory damages as a result of Defendant's failure to furnish accurate wage notice pursuant to the NYLL;

j) awarding Plaintiff pre-and post-judgment interest under the NYLL;

k) awarding Plaintiff reasonable attorneys' fees and the costs and disbursements of this action; and

l) All such other and further relief as the Court deems and proper.

## JURY DEMAND

Plaintiffs and all similarly situated employees demand a jury trial on all issues triable by a jury.

Dated: December 23, 2023
Brooklyn, New York

*Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

## DEMAND FOR INSURANCE COVERAGE

Defendants are demanded to provide a complete copy of their applicable insurance policies and declaration sheets demonstrating coverage within thirty (30) days of service of this Complaint.

Dated: December 23, 2023
Brooklyn, New York

*Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com

## **PRESERVATION NOTICE**

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

In terms of the paper information, you are directed to preserve any and all emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents which pertain in any way to the controversy, parties, or witnesses in this matter. Through discovery, we expect to obtain from you a number of documents and other data, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for

discovery on this case arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this Complaint's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: December 23, 2023
Brooklyn, New York

*Tyrone A. Blackburn*
Tyrone A. Blackburn, Esq.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236
Phone: 347-342-7432
Email: Tblackburn@tablackburnlaw.com