```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED: 9/4/2024             │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

AFIYFAH MUHAMMAD, et al.,

                        Plaintiffs,

              -against-

ALTO PHARMACY LLC, et al.,

                        Defendant.

-----------------------------------------------------------------X

         **23-CV-11315 (KHP)**

    **OPINION AND ORDER ON**
  **MOTION TO DISMISS AMENDED**
          **COMPLAINT**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiffs Afiyfah Muhammad, Darwin Wilson, and Dominique Skinner[1] bring this action on behalf of themselves and a putative class and collective against Defendant Alto Pharmacy LLC ("Alto") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and New York Labor law.  Their claims are all premised on the allegation that they were misclassified as independent contractors.  Assuming they were misclassified, they allege they were not paid in accordance with applicable law and seek unpaid wages, including overtime pay and spread of hours pay, unreimbursed costs, tips that were wrongfully withheld, liquidated damages, statutory penalties for failure to provide wage notices and proper wage statements, and attorneys' fees and costs.

Alto has filed a motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2)  to dismiss the Amended Complaint ("Compl.").  (ECF No. 39) For the reasons set forth below, the motion is granted in part and denied in part.

---

[1] Additionally, Plaintiff Venezia Mendoza is an opt-in Plaintiff.

**FACTUAL ALLEGATIONS**

Alto is a venture capital backed app-based "digital pharmacy."  (Compl. ¶ 21.)  It is headquartered in San Francisco, California.  (Id. ¶ 22.)  It maintains a principal place of business at 100 Park Avenue in New York City, where it operates a licensed pharmacy.  (Id. ¶¶ 25-26.)  Alto interacts with its customers and delivery/couriers principally through digital applications.  (Id. ¶ 47.)  It uses a software called "When I Work" ("WIW") to track its couriers' workflow.  (Id. ¶ 48.)  WIW's capabilities include employee tracking, scheduling and payroll.  (Id. ¶ 49.)  Alto also uses Slack for communications and messaging with and among its couriers.  (Id. ¶ 50.)

Plaintiffs all worked for Alto as delivery persons or prescription couriers at its Park Avenue location.  Muhammad worked as a delivery driver, and Wilson and Skinner worked as a prescription couriers.  (Id. ¶¶ 9, 11, 16.)  Muhammad was employed from in or about September 2022 through the present.[2]  (Id. ¶ 7.)  Wilson was employed from in or about January 2022 through July 2023.  (Id. ¶ 11.)  Skinner was employed from in or about March 2022 through February 2023.  (Id. ¶ 16.)  Muhammad and Wilson are authorized to drive and maintain car insurance.  (Id. ¶¶ 10, 15.)  The distinction between a delivery driver and prescription courier is not clear from the Amended Complaint, although the pleading is drafted as if these positions were interchangeable.

Each Plaintiff submitted an online application to work as a courier for Alto, after which they were invited to a mandatory company orientation where they were introduced

---

[2] Subsequent to the filing of the Amended Complaint, in or about July 2024, Muhammad ceased working for Alto. (ECF No. 43)

to Alto's operations and workplace rules.  (Id. ¶¶ 42-43.)  Thereafter, Plaintiffs were required to attend a mandatory training session that provided additional details about Alto's workplace rules, software and operating technology, including WIW and Slack.  (Id. ¶ 44.)  Plaintiffs were given a contractor agreement to sign and assigned an employee id number.  (Id. ¶ 45.)

To be scheduled to work, couriers must log into the WIW app and select "shifts" for the week.  Shifts are in four-to-five hour time slots, with each day divided into a morning shift and an afternoon shift.  (Id. ¶¶ 52-53, 55.) Upon selecting their shift, couriers are assigned routes, which consist of a set number of Alto customers along the route who ordered prescriptions from Alto. (Id. ¶ 55.)  The Amended Complaint does not state whether delivery drivers followed the same procedures as couriers.  The Amended Complaint also does not state whether delivery routes were exclusively within New York City, where Plaintiffs started their routes (presumably at the Park Avenue location where they picked up the prescriptions), or whether Plaintiffs had to report back to Alto's Park Avenue location upon completion of their routes.

Muhammad's responsibilities as a delivery driver included arriving on time for her shift and delivering prescriptions on a prescribed route while ensuring great customer service.  (Id. ¶ 9.) Job requirements included having a valid drivers license, general liability and motor vehicle insurance, a track record of good attendance, a positive attitude, flexibility, speaking English, and having a passion for customer service.  (Id.)  The Amended Complaint does not specify the duties and qualifications for the position of prescription

courier as opposed to delivery driver, but it can be inferred from the complaint that Wilson and Skinner utilized the WIW app to sign up for shifts to deliver pharmacy prescriptions to Alto's customers in and around New York City and that their duties consisted of delivering prescriptions.

Plaintiffs allege that they regularly worked six days per week, Mondays through Saturdays from 8:00 a.m. to 9:00 p.m. or until the final delivery was made for the day.  (Id. ¶ 54.)  They allege that they made between 13 and 17 deliveries per shift, which the Court interprets to mean that each Plaintiff made between 26 and 34 deliveries per day (because there were two shifts per day).  (Id. ¶¶ 52-53, 56.)  They allege that other couriers also typically worked both morning and afternoon shifts.  (Id. ¶ 57.)  Couriers are required to clock into work at the beginning of the morning shift and clock out at the end of that shift and then again required to clock in at the beginning of the afternoon shift and out at the end of that shift.  (Id. ¶ 57.)  According to Plaintiffs, couriers are not compensated for the time between clocking out at the end of the morning shift and clocking in at the beginning of the afternoon shift.[3]  (Id. ¶ 58.)  Plaintiffs also assert that couriers are not compensated for time waiting to pick up packages to deliver.  (Id. ¶ 59.)  The Amended Complaint does not make clear when the waiting time occurs (that is, whether it happens before the commencement of a shift, during shifts, or between morning and afternoon shifts).  The

---

[3] Plaintiffs do not provide the end time of the morning shift, but the Court infers that it ends at either noon or 1:00 p.m. because of the allegation that each shift is four or five hours.  Plaintiffs likewise do not provide a start time for the afternoon shift, but the Court infers it starts at 4:00 or 5:00 p.m. for the same reason.  Thus, the Court infers there is a break in the middle of the day between shifts of about four hours based on the allegations (that is, a mid-day break sometime between the hours of 12:00 p.m. and 5:00 p.m.).

Amended Complaint asserts that couriers are expected to work through each shift without a break and are not compensated for meal or break time.  (Id. ¶ 66.)  The Amended Complaint does not state whether these allegations apply equally to all delivery drivers, but the allegations, while not entirely clear, suggest that Muhammad worked the same hours as Skinner and Wilson.

Couriers were paid a flat rate of $21.50 per hour and not paid time and a half for hours worked above 40 in a workweek.  (Id. ¶¶ 60-61.)  The Amended Complaint does not state whether the pay for delivery drivers differed from courier pay, but it does state that Plaintiff Muhammad was paid at a flat rate of $21.50.  (Id. ¶ 62.)

Plaintiff Muhammad states that she worked 49.18 hours the week of November 14, 2022 at the flat rate of $21.50 per hour and did not receive time and a half for the 9.18 hours of overtime that week.  (Id. ¶ 62.)  Plaintiffs Skinner and Wilson allege they worked over 40 hours in a workweek but did not receive time and a half for hours worked over 40. (Id. ¶ 63.)  Based on allegations about Plaintiffs' regular work hours, the Court can infer that Plaintiffs worked between eight and ten hours per day, six days per week, for an average of 48 to 60 hours per week not including the break between the morning and afternoon shifts.  (Id. ¶¶ 82-83.)

While the Amended Complaint states that Plaintiffs were paid a flat rate of $21.50 per hour and required to work through shifts without a break, it also suggests they were not paid for break time.  Thus, it is not clear whether Plaintiffs' pay was computed hourly based on their clock-in and clock-out times at each shift (e.g., $21.50 x 4 for a shift starting

at 8:00 a.m. and ending at noon) or whether there were any breaks of 20 minutes or less

during a shift that were uncompensated.  Alternatively, it is unclear whether Plaintiffs are

saying they should be paid for the time between the morning and afternoon shifts and

characterizing that whole time period as a break.[4]  Plaintiffs' claims concerning meal breaks

are also unclear insofar as they complain they were not compensated for mealtime but do

not say they worked through meal periods, do not state when they were supposed to take

meal breaks or the duration of the meal breaks, or whether they are asserting that bona

fide mealtimes had to be compensated.[5]

Plaintiffs allege that they were categorized as independent contractors improperly,

and that they were in actuality employees.  (Id. ¶ 67.)  In support of this allegation, they

state that couriers are Alto's primary workforce and that they are supervised by

dispatchers, area supervisors, and pharmacy managers, all of whom are categorized as

employees.  (Id. ¶ 70.)  Dispatchers have the most frequent interaction with couriers,

assigning routes and keeping tabs on couriers during their shifts.  Dispatchers have the

power to discipline and terminate couriers who violate Alto's policies and often threatened

---

[4] While New York law requires employees to be provided with meal breaks of specified lengths based on the times and durations of their shifts, there is no private right of action to enforce claims under New York Labor Law 162. *Awan v. Durrani,* 14 CV 4562, 2015 WL 4000139, at *9 n. 12 (E.D.N.Y. July 1, 2015); *Romero v. DHL Express, Inc.,* 12 CV 1942, 2015 WL 1315191, at *7 (S.D.N.Y. Mar. 24, 2015).  Rather, the question is whether an employee was not paid for breaks of 20 minutes or less, in which case, there may be wages due for such breaks.  *Gamero* v. *Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 785.18 (advising that such short rest breaks "must be counted as hours worked")); *but see* 29 C.F.R. §  785.19(a) (recognizing that bona fide meal periods lasting for less than 30 minutes may be uncompensated in certain situations).

[5] Neither the FLSA nor New York Labor Law require paid meal breaks if those breaks are in fact unencumbered with work.  29 C.F.R. §§ 785.18-19 (discussing meal and rest periods); https://www.dol.gov/general/topic/workhours/breaks (last visited August 22, 2024); N.Y. Lab. Law 162; https://dol.ny.gov/day-rest-and-meal-periods (last visited August 22, 2024.)

termination when couriers did not comply with company rules.  As an example, on one occasion a dispatcher sent a Slack message to a group of couriers threatening immediate termination if they returned packages to the pharmacy in a manner contrary to her orders. Dispatchers also stripped couriers of shifts if couriers failed to give sufficient notice of days off or absences.  (Id. ¶¶ 71-75.)  Similarly Dispatchers and Area Supervisors had authority to (and did) adjust courier's hours, sometimes clocking them in or out of shifts and shaving time from their work hours.  As an example, Plaintiff Muhammad worked 40.3 hours the week of May 27, 2024, but her hours were adjusted down to 39.8 hours. (Id. ¶¶ 77-79.) The Amended Complaint states that each of the named Plaintiffs were subject to the same scheduling and pay terms and conditions, often working more than 10 hours per day and sometimes more than 10 hours per day.[6]  (Id. ¶¶ 81-83.)

      According to the Amended Complaint, Alto retained between 75-100% of its courier tips purportedly to give them to pharmacy staff and management, but did not in fact give them to pharmacy employees and instead merely retained those tips for general corporate purposes. (Id. ¶¶ 84-85, 87.)  Also, Plaintiffs contend that their managers sometimes forced Plaintiffs to give them a portion of their tips and, if Plaintiffs did not comply, the managers would not timely process Plaintiff's payroll, take away work shifts or threaten them with termination.  (Id. ¶¶ 89-91.)  For example, in May 2023, Plaintiff Wilson complained to his manager and in-store leadership about missing tips, as well as unpaid overtime, after which his routes were stripped and employment terminated.  (Id. ¶ 94.)  In October 2023, Plaintiff

---

[6] It is unclear whether Plaintiffs include the break between the end of the morning shift and beginning of the afternoon shift as time worked for purposes of this allegation.

Muhammad complained to her manager about unpaid overtime and her hours were reduced and routes stripped.  (Id. ¶ 97.)  Plaintiffs do not otherwise provide specifics about withheld tips, do not state the amount of the tips that were withheld or the number of shifts taken away and how the removed shifts affected their hours worked in any week.

Plaintiffs allege they were not paid spread-of-hours pay as required by state law for days on which they worked more than ten hours, but do not state which days, if any, they worked more than ten hours. (Id. ¶¶ 126-127.)

Plaintiffs state that their paystubs reflected the tipped minimum wage rate, not the rate of $21.50 per hour, and thus did not comply with state law payroll requirements.  (Id. ¶ 92.)  Plaintiffs state that Alto also did not furnish them with a wage notice at the time of hire regarding their correct rates of pay, hours, shifts, etc. in violation of state law.  (Id. ¶ 123.)

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations," but the plaintiff must provide facts that plausibly suggest an entitlement to relief — "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).  So too, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94, (2007) (per curiam).

Additionally, it must draw all reasonable inferences in plaintiff's favor and must confine its review to the pleading, documents incorporated therein by reference, and matters of which a court may take judicial notice. *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021).

If a defendant moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, plaintiff bears the burden of establishing jurisdiction over the defendants. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (citation omitted). A plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction." *Id.* (citing *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998)). The court "must credit a plaintiff's allegations in support of jurisdiction." *PharmacyChecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 530 F. Supp. 3d 301, 321 (S.D.N.Y. 2021) (citing *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).

## DISCUSSION

Defendant assumes for purposes of the motion that Plaintiffs were employees and moves to dismiss the Amended Complaint on the grounds that Plaintiffs have failed to plead sufficient facts to plausibly state a claim under federal law for unpaid minimum wage or overtime wages.[7] It also moves to dismiss the class and collective claims of putative class and collective members who were employed outside of New York for lack of personal jurisdiction. Finally, it asks the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims if the Court dismisses the federal claims.

---

[7] Under the FLSA, employers are required to pay employees a minimum wage of $7.25 per hour. 29 U.S.C. § 206. The New York State minimum wage in New York City was $15 per hour in 2022 and 2023 and increased to $16 per hour as of January 1, 2024. N.Y. Lab. L. § 652.

Because Defendant's motion assumes employee status, the Court does not address whether the Amended Complaint plausibly states a claim that Plaintiffs were employees. Additionally, Plaintiffs concede they do not have a claim for unpaid minimum wages under federal law, and that the Court has no personal jurisdiction over Alto for delivery drivers/prescription couriers who worked outside of New York. Therefore, the only issues remaining are whether Plaintiffs plausibly allege claims for unpaid overtime under federal law and, if not, whether the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

### 1. Overtime

The FLSA was enacted by Congress to "protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739, 101 S. C.t 1437, 67 L.Ed. 2d 641 (1981) (quoting 29 U.S.C. § 202(a)). To establish a claim under the FLSA, a plaintiff must show: (1) that he or she was an "employee" of the Defendant, as defined by the statute; (2) that the Defendant was an employer engaged in commerce; and (3) that the employment relationship was not exempt from the FLSA. *See Dejesus v. HF Mgmt. Servs.*, LLC, 726 F.3d 85, 90 (2d Cir. 2013) (plaintiff alleged facts about employment status and duties to satisfy FLSA claim).

Section 206 of the FLSA sets forth the minimum hourly wage that employers must pay their employees. *Id.*; 29 U.S.C. § 206(a)(1)(C). Section 207 specifies that an employer must pay

10

employees who work more than forty hours during a workweek for the excess hours "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). There is a presumption that an employee is entitled to overtime; an employer bears the burden of proving that an employee is exempt from overtime. 29 USC § 207(a)(1); *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (recognizing that exempt status under the FLSA is an affirmative defense).  Courts routinely treat delivery employees as nonexempt and eligible for overtime.  See, e.g., *Lorenzo v. Dee Mark Inc*., 702 F. Supp.3d 194 (S.D.N.Y. 2023) (recognizing delivery workers who delivered food for restaurants eligible for overtime; conditionally certifying collective of delivery employees); *Espinoza v. Broadway Pizza & Restaurant Corp.*, 17 Civ. 7995, 2021 SL 7903991 (S.D.N.Y. Nov. 18, 2021), adopted at 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022) (recognizing that delivery worker was eligible for overtime).

Defendant argues that the allegations in the Amended Complaint are too generic to state a claim of overtime because they do not specify the work activities of couriers, and that their allegations concerning their regular work schedule does not provide sufficient information about the exact number of hours worked to ascertain whether they worked overtime and fail to provide sufficient color or context to the work they were performing during the work hours to suggest that they were actually working during their entire shifts.

The Second Circuit recently addressed the pleading standard for plausibly asserting an overtime claim in *Herrera v. Comme des Garcons, Ltd*., 84 F.4[th] 110 (2d Cir. 2023).  It held that plaintiffs must please FLSA overtime claims with "specificity."  Id. at 115 (quoting *Nakahata v.*

*New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 200 (2d Cir. 2013). "To satisfy that standard, plaintiffs must sufficiently allege '40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Id.* (quoting *Lundy v. Cath. Health Sys. of Long Island Inc*., 711 F.3d 106, 114 (2d Cir. 2013) and *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85,88 (2d Cir. 2013)).

A plaintiff is not required "to make an approximation of overtime hours" to satisfy the pleading standard. *Id*. (quoting *Dejesus*, 726 F.3d at 88 and *Lundy*, 711 F.3d at 114 n.7)). So long as plaintiffs plausibly allege they works in excess of forty hours in a workweek, the plaintiff need not "provide a week-by-week recounting of the hours they worked." *Id*. Where a regularly scheduled workweek for a given period includes more than forty hours of work, the pleading standard is satisfied. *Id*. at 117. In contrast, a pleading that is too vague, such as one that merely pleads that "at some undefined period in [the plaintiffs] employment they worked more than forty hours in a single week," would not satisfy the standard. *Id*. at 117. Thus, in *Herrera*, it was sufficient that the plaintiffs alleged their regularly scheduled work hours resulted in more than 40 hours each workweek, because that allegation in itself leads to a plausible inference that the plaintiff worked overtime. *Id*. at 116. The Court also pointed to other allegations that supported a claim, including that in addition to regularly scheduled hours, the plaintiff worked up to an additional eight hours each week on post-work duties and receiving shipments of merchandise. *Id*. As a result, the court reversed the district court's dismissal of the complaint, finding that it's reading of the complaint was too crabbed and criticizing its holding that the plaintiff had to provide additional detail about the duration and

frequency of work shifts and lunch breaks. *Id*.  The Court was unbothered by the fact that the complaint asserted all of the plaintiffs and proposed class and collective members worked the same schedule, commenting that "[w]hat constitutes a 'typical' workweek" was essential to explaining the common experience of the plaintiffs, individuals who contended they were misclassified as exempt from overtime and worked nearly identical schedules.  *Id*. at 117.

While it is true that it would be helpful for the Plaintiffs to provide some additional details about their working hours and pay, the allegations in the Amended Complaint nevertheless satisfy the standard set forth in *Herrara* and plausibly state a claim for overtime under the FLSA.  Specifically, the Plaintiffs allege that they each worked a regular schedule that resulted in at least approximately 48 hours of work each week.  This would make them eligible for overtime.  They have further alleged that they were paid $21.50 for all hours worked, meaning that they did not receive the additional half time rate of $10.75 for the hours worked over forty each week.  Plaintiff Muhammad provided examples of two specific weeks in May 2024 and November 2022 in which she worked more than 40 hours but was not paid an overtime rate for her overtime hours.

2. **State Law Claims**

Insofar as I find that the Plaintiffs have plausibly pleaded a claim for overtime under the FLSA, Defendant's argument that the Court should decline to exercise jurisdiction over the state law claims is moot.

**3.  New York Wage Theft Prevention Act Claims**

Although Defendant has not raised the issue, the Court has identified a standing issue with respect to Plaintiffs' claims under New York's Wage Theft Prevention Act ("WTPA").  The Court is obligated to consider *sua sponte* constitutional Article III standing to ensure that it possesses jurisdiction. *See Sharkey v. Quarantillo*, 541 F.3d 75, 88 (2d Cir. 2008) (courts are "required to raise" threshold jurisdictional issues "*sua sponte*") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Plaintiffs seek statutory damages for Defendants' failure to provide wage notices and wage statements in compliance with New York's Wage Theft Prevention Act ("WTPA"), NYLL § 195(1) and (3).  New York Labor Law provides a private cause of action for violations of NYLL Sections 195(1) (new hire notices) and 195(3) (wage statements).  N.Y. Lab. Law §§ 198(1-b), (1-d).  Pursuant to a 2015 amendment to the law, statutory damages for failure to provide initial hire notices are $50 per day up to a maximum recovery of $5,000.00 per employee.[8] NYLL § 198(1-b).  Statutory damages for failure to provide wage statements are $250 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  N.Y. Lab. Law § 198(1-d); *see also Teofilo v. Real Thai Cuisine Inc.*, 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021).

The Supreme Court clarified the requirement for Article III standing in *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), holding that "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation

---

[8] Prior to the 2015 amendment, the law provided for a maximum recovery of $2,500 in statutory damages. N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Feb. 26, 2015).

in federal court." *Id.* at 427.  Pursuant to *TransUnion*, a plaintiff lacks standing in federal court to claim violations of NYLL where he "cannot demonstrate a tangible injury as a result of the defendant's violation of [NYLL wage notice and wage statement provisions]." *Huerta v. 101 N. Laundromat Inc.*, No. 21CV6127ARRCLP, 2023 WL 199699, at *2 (E.D.N.Y. Jan. 17, 2023); *see also Zavala v. Top Shelf Elec. Corp.*, No. 20CIV9437JGLCGWG, 2024 WL 1543605, at *5 (S.D.N.Y. Apr. 10, 2024).  Plaintiffs have not pled that they suffered tangible injury as a result of Defendants' failure to provide them with wage notices or statements.  Instead, Plaintiffs merely allege that Defendants failed to provide them with a wage notice and proper wage statements.  Accordingly, these claims must be dismissed for lack of standing.

## CONCLUSION

For the reasons set forth above, the motion to dismiss at ECF No. 39 is GRANTED in part and DENIED in part.  The Second Cause of Action for Failure to Pay minimum wages in violation of the FLSA is dismissed with prejudice.  The Fifth Cause of Action for failure to provide statutory wage notices and statements in violation of the WTPA is dismissed without prejudice.   The motion is otherwise denied. The putative class and collective claims are limited to those individuals who worked for Alto in New York per Plaintiff's clarification in response to the motion.

Insofar as Plaintiffs have requested permission to file a Second Amended Complaint, Plaintiffs shall provide Defendant with a copy of the proposed amended pleading by September 11, 2024.  The parties shall then meet and confer regarding whether Defendant consents to the filing of the amended pleading without prejudice to

filing a motion to dismiss directed at that pleading or, alternatively, wishes to oppose the filing of an amended pleading.  By September 18, 2024, the parties shall file a letter with the Court indicating whether they stipulate to the filing of an amended pleading together with any proposed briefing schedule on a motion to dismiss or, alternatively, provide a proposed briefing schedule for the motion to amend.

      **SO ORDERED.**

DATED:      New York, New York
               September 4, 2024

_____
KATHARINE H. PARKER
United States Magistrate Judge