UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AFIYFAH MUHAMMAD, DARWIN WILSON, and
DOMINIQUE SKINNER, *collectively and on behalf
of themselves and all others similarly situated,*

                                       Plaintiffs,

       -against-

ALTO PHARMACY LLC, JOHN DOES 1-10, JANE
DOES 1-10, and ABC CORPS. 1-10,

                                       Defendants.
-----------------------------------------------------------------X

**OPINION AND ORDER ON
MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT**

23-CV-11315 (KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

On September 4, 2024, the Court dismissed Plaintiffs' claims under New York's Wage Theft Prevention Act ("WTPA"), New York Labor Law ("NYLL") §§ 195(1 & 3) for lack of standing. (ECF No. 54) These claims seek statutory damages for Defendants' alleged failure to provide legally compliant wage notices and statements. Plaintiffs now move for leave to file a Second Amended Complaint (the "Motion") to restore their WTPA claims on the ground that they have added sufficient facts to support a plausible inference of concrete injuries stemming from the wage notice/statement violations, consistent with the requirement of Article III of the United States Constitution. (ECF No. 57-59) For the reasons discussed below, the Motion is GRANTED.

**LEGAL STANDARD**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within specified time periods not applicable here. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (citation omitted). Under Rule 15, leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corrs.*, 214 F.3d 275, 283 (2d Cir. 2000).

A court may deny a motion to amend a complaint when the proposed amendments are futile. Proposed amendments are futile when they would fail to state a claim under Rule 12(b)(6). *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "The party opposing the amendment has the burden of demonstrating that leave to amend would be futile." *Margel v. E.G.L. Gem Lab Ltd.*, 2010 WL 445192, at *3 (S.D.N.Y. Feb. 8, 2010) (citation omitted). Because determination of futility is subject to the same standards as a motion to dismiss under Rule 12(b)(6), "[f]utility is generally adjudicated without resort to any outside evidence," and the court must accept all facts pleaded as true. *Wingate v. Gives*, 2009 WL 424359, at *5 (S.D.N.Y. Feb. 13, 2009); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Finally, at the motion to dismiss stage of the case, the plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest" they have standing. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted). Here, Defendants argue the

2

amendment is futile because the proposed amended pleading does not plausibly allege standing.

## DISCUSSION

Under Article III of the United States Constitution, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). A "concrete" harm is one that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 417 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)).

The Second Circuit recently evaluated what is required at the pleading stage to demonstrate Article III standing for alleged violations of New York's WTPA, stating that "a plaintiff cannot rely on technical violations" of the WTPA but rather must alleged "actual injuries suffered as a result" of those violations. *Guthrie v. Rainbow Fencing Inc.*, 113 4th 300, 305 (2d Cir. 2024). It further explained that a plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm." *Id.* at 308. For example, if a violation is alleged to have "prevented an employee from obtaining full payment of wages in a timely fashion," and such allegation is supported by a "plausible 'theory as to *how* he was injured'" by the wage notice violation, then Article III standing is plausibly alleged. *Id*. at 309 (emphasis in original). That is, the untimely discovery of underpayment of wages and/or a delay in obtaining full pay are harms beyond the technical notice violations. *Id*. at 306 (citing *Harty v. West Point*

3

*Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)).  Similarly, if a plaintiff alleges facts supporting a plausible inference that the wage statement/notice violation prevented him from undertaking advocacy to obtain the correct wage payment and avoiding some actual harm, then Article III standing is satisfied.  *Id*. at 308.

Here, Plaintiffs' proposed Second Amended Complaint alleges that Defendants "concealed the company's practice of manually adjusting couriers' work hours to reduce their pay."  (PSAC, ECF No. 58-1 at ¶ 54)  It further asserts that "the manual adjustments were completed by Alto Pharmacy staffers through the company's digital timekeeping software either after a courier's work shift or after a courier's workweek" and that couriers did not have access to pre-adjustment records to double check that their pay was correct.  (*Id.* at ¶¶ 56-57, 60).  While it is true that Plaintiffs identified some paychecks that they believe reflect underpayments, it is plausible that there are other underpayments that Plaintiffs were not able to identify due to Defendants' alleged manipulation of their hours.

Relatedly, Plaintiffs allege that Defendants "misclassified [their] couriers as independent contractors in order to shift pay, tax and benefits burdens of employment away from the company and to the couriers."  (*Id.* at ¶ 63)  The Court understands this to mean that Plaintiffs were paid as if they were independent contractors.  Yet, at the same time, Plaintiffs assert that "Alto Pharmacy's Courier Timekeeping Policy [] classified the couriers as employees and stated that Alto Pharmacy paid its couriers per the FLSA," which suggests they should have been provided wage notices which "would have alerted the couriers that they were improperly classified as independent contractors."  (*Id.* at ¶ 64-67)  As a consequence of being treated as

4

independent contractors, Plaintiffs assert that they paid "more in taxes due to the self-employment tax," were treated as ineligible for overtime pay, were ineligible for company benefits and were treated as if they were not protected "by laws that prescribe worker protections." (*Id.* at ¶ 68)  These additional allegations bolster a theory that Defendants deliberately concealed or created confusion about Plaintiffs' status (*i.e.*, whether they were employees or independent contractors).  That is, had Plaintiffs received a wage notice stating that they were employees, Plaintiffs would have questioned why they were paid as independent contractors.  And had they received an accurate statement of their hours together with access to pre-adjustment time records, they also could have checked the accuracy of their pay and questioned not only why they were paid as independent contractors, but also why they were not entitled to overtime in weeks they worked more than 40 hours.  Further, the allegations plausibly allege that the pay statements that treated Plaintiffs as if they were independent contractors had tax and benefit disadvantages – another concrete harm from the inaccurate wage statements and alleged concealment of their status as employees by failure to provide wage notices.

Plaintiffs' new, more robust allegations supply a theory as to how they were injured by the technical notice violations, identify a concrete harm beyond the technical notice violations, and a plausible connection between the violations and the harm.  Thus, they are sufficient to confer Article III standing on Plaintiffs for the WTPA claims. *See, e.g., Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948 (JPO), 2024 WL 3429129, *4 (S.D.N.Y. July 16, 2024) (holding that plaintiff established the required concrete harm and causal connection for Article III

standing where plaintiff alleged that her "wage statements showed fewer hours than what [she] actually worked, which prevented [her] from determining and seeking payment for the precise amount of [her] unpaid wages" and she was thus "harmed by being deprived of [her] income for longer than [she] would have been had [she] been able to timely raise [her] underpayment earlier"); *Castillo v. Hollis Delicatessen Corp.*, 22-cv-5476 (AMD)(PK), 2024 WL 4107258, *1 n.1 (E.D.N.Y. Sept. 6, 2024) (holding that plaintiff established the required concrete harm and causal connection for Article III standing where plaintiff alleged defendants "were able to hide their violations of wage and hour laws and take advantage of [p]laintiff's relative lack of sophistication by failing to provide her with wage information"); *Reyes v. Crystal Window & Door Sys.*, No. 23-cv2578 (RPK)(JRC), 2024 WL 4828308, *1 (E.D.N.Y. Sept. 3, 2024) (holding that plaintiff established the required concrete harm and causal connection for Article III standing where plaintiff alleged that "defendant's failure to provide the notices 'resulted in Plaintiffs working for years without knowledge of their correct pay frequency and overtime rate' . . . '[resulting in] Defendant [] pay[in] [them] without proper overtime premium'").

Defendants rely on *Lock v. Costco Wholesale Corp.* to argue that Plaintiffs' Motion should be denied for lack of Article III standing, but their reliance is misplaced. No. 23-cv-07904 (E.D.N.Y Nov. 8, 2024). The *Lock* case is different from the present case in several important ways. First, in *Lock*, the court was confronted with declarations from the plaintiffs that contradicted allegations in the complaint that undermined their assertion that they could not compute the overtime they were owed. The court took notice of the declarations and found that plaintiffs knew how many hours of overtime they worked. The harm alleged was an

inability to compute overtime. In the instant case, Plaintiffs allege more than an inability to compute overtime. As discussed above, Plaintiffs allege that they suffered from underpayment, tax-related financial harm, ineligibility for company benefits, and a lack of worker protections stemming from an alleged concealment of their status as employees and manipulation of their time to reflect fewer hours than they had actually worked. Further, in *Lock*, there was no allegation that the employer altered clock-in hours on wage statements or deprived plaintiffs of information necessary to verify their hours worked and related pay. Therefore, the Court finds the *Lock* case to be unpersuasive.

As noted above, at this stage of the case, the Court is merely evaluating whether the pleading alleges facts that affirmatively and plausibly suggest standing. The Court finds that the amended pleading satisfies this standard.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Leave to File a Second Amended Complaint is granted. Defendants shall file their Answer to Plaintiffs' Second Amended Complaint within 14 business days of the date of this Order.

SO ORDERED.

Dated: January 17, 2025
New York, New York

*Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge