UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

AFIYFAH MUHAMMAD, et al.,

                                        Plaintiffs,

                    -against-

ALTO PHARMACY LLC, et al.,

                                        Defendants.
----------------------------------------------------------------X

KATHARINE H. PARKER, United States Magistrate Judge:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/1/2025__

**23-CV-11315 (KHP)**

**OPINION AND ORDER ON
MOTION FOR CONDITIONAL
CERTIFICATION**

Plaintiffs Afiyfah Muhammad, Darwin Wilson, and Dominique Skinner worked as couriers/delivery drivers[1] for Alto Pharmacy LLC ("Alto") in New York City.  They filed this action on December 30, 2023, claiming that Alto failed to pay couriers overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190 *et seq.* and seeking to represent a class and collective of similarly situated couriers who worked for Alto in New York City from January 1, 2021 to July 16, 2024. They now move pursuant to 29 U.S.C. § 216(b) for an order "conditionally certifying" this case as an FLSA collective action and authorizing notice to be sent to potential opt-in plaintiffs. ECF No. 75.  For the following reasons, Plaintiffs' motion is granted.

---

[1] The Court uses the terms "courier" and "delivery driver" interchangeably.

## BACKGROUND[2]

Alto is a pharmacy founded in 2015 that now operates in multiple cities across the United States, including New York City.  ECF No. 65, Second Amended Complaint ("SAC") ¶¶ 26-27.  Customers do not pick up prescriptions; rather, prescriptions are ordered online and then delivered by couriers.  According to the SAC, couriers are the primary workforce and were required to deliver prescriptions to customers in all five boroughs.  SAC ¶ 9.

Alto's website described the duties of a courier.  It included language setting forth courier "Responsibilities" as "arriv[ing] at our pharmacy on time for your shift to pick up packages before you begin your route, and deliver[ing] prescriptions to patients while ensuring a great customer experience."  SAC ¶ 12.  Qualifications included having "a track record of good attendance, positive attitude, and flexibility," and being able to drive "within any of our delivery zones."  *Id.*  Individuals who wanted to work as couriers had to submit an online application with Alto.  SAC ¶ 47.  Alto required new couriers to attend a mandatory company orientation at which it introduced workplace culture, operations and workplace rules.  SAC ¶ 48.  After that orientation, new couriers had to attend a mandatory training session that described Alto's software and operating technology.  SAC ¶ 49.  Couriers were assigned an i.d. number and given an independent contractor agreement to sign.  SAC ¶ 50.  Each of the Plaintiffs signed such an agreement.  SAC ¶ 50; Charles Dec., Exh. A; Muhammad Dec. ¶ 12, Exh. A; Wilson Dec. ¶ 3, Exh.

---

[2] The Court relies on the allegations in the Second Amended Complaint ("SAC") (ECF No. 65), and the Declarations of Fred v. Charles ("Charles Dec."), Afiyfah Muhammad ("Muhammad Dec."), Darwin Wilson ("Wilson Dec."), and Dominique Skinner ("Skinner Dec.") and exhibits appended thereto (all submitted in connection with the instant motion) in setting forth the factual background herein.  The counterclaim allegations, for which no answer has been interposed, assert that Plaintiffs were independent contractors based on the language of the independent contractor agreements they each signed are referenced herein as "CC".  Counterclaims, ECF No. 67.  The Court also cites to the Declaration of Joshua Howard, Alto Senior Program Manager ("Howard Dec."), ECF 88 and exhibits thereto.

A; Skinner Dec. ¶ 12, Exh. A. Alto represents that it terminated all independent contractor

arrangements on July 17, 2024. ECF No. 88, Howard Dec. ¶ 4.

Once the initial training and paperwork was completed, couriers could begin delivering

medicines. Alto required couriers to log into its scheduling system, which was called "When I

Work," to select work shifts. SAC ¶ 75. It also provided for tracking of deliveries out with

couriers and payment for deliveries. SAC ¶¶ 71-72, 75. Alto also communicated with couriers

through Slack while they were out on delivery. SAC ¶ 73; Muhammad Dec. ¶ 10. Alto

determined which deliveries couriers would complete, and its dispatchers and area supervisors

monitored, disciplined and discharged couriers who failed to comply with company policies.

SAC ¶¶ 96-98. As an example, Plaintiffs say Alto dispatcher La'Tasha Flowers-McAdas sent a

Slack message to all couriers threatening immediate termination if they failed to return

undelivered packages in the precise manner she instructed. SAC ¶ 99.

Plaintiff Muhammad worked for Alto from in or around September 2022 to July 16,

2024. SAC ¶ 7; Muhammad Dec. ¶ 3. Plaintiff Wilson worked for Alto from in or around

January 2022 through July 2023. SAC ¶ 14; Wilson Dec. ¶ 3. Plaintiff Skinner worked for Alto

from in or around March 2022 through February 2023. SAC ¶ 20; Skinner Dec. ¶ 3. Couriers

worked Mondays through Saturdays during two shifts, which spanned from 8:00 a.m. to 9:00

p.m. (or until final delivery was made). SAC ¶¶ 77, 79-80. Once couriers sign up for shifts, the

system assigns them routes and identifies customers along the route to whom deliveries must

be made. SAC ¶ 78. Couriers were required to report to Alto's Park Avenue address in

Manhattan to pick up prescriptions at the beginning of their shift and generally made between

13 to 17 deliveries per shift. SAC ¶ 79. If a delivery could not be made, couriers had to return

the medicine to Alto at the end of their shift.  SAC ¶ 83.  Couriers were required to clock-out at the end of a morning shift and clock-in at the start of an afternoon shift.  SAC ¶ 80.  Most couriers worked two shifts per day.  SAC ¶ 80.  Couriers were not compensated for hours between the morning and afternoon shift or for the time spent waiting to pick up packages to be delivered during the shift.  SAC ¶¶ 81-82.  Shifts were either four or five hours.  SAC ¶ 76.  From this, the Court infers that morning shifts were from 8:00 a.m. to 12:00 or 1:00 p.m.  and that evening shifts were from 4:00 or 5:00 p.m. to 9:00 p.m., meaning that mid-day breaks were between 12:00 and 5:00 p.m., with the shortest being 3 hours long and the longest being 5 hours long.  Thus, the maximum workday covering two five-hour shifts would be 10 hours of work with a three-hour mid-day break.  The Court infers that overtime hours, when worked, occurred at the end of a shift because of traffic or other reasons for delays in delivering medicine or for those couriers whose assigned shifts otherwise spanned more than 40 hours in a workweek.

Alto provided its couriers with a Timekeeping Policy, which stated that they would be paid in accordance with the FLSA and had to keep accurate records in order to properly calculate their pay.  SAC ¶¶ 93-94; Charles Dec., Exh. B; Muhammad Dec. ¶ 14-15, Exh. B.  The policy also states that supervisors review and approve time records before submitting them to payroll.  *Id.*  Plaintiffs state that they relied on the Timekeeping Policy to consider themselves employees.  Muhammad Dec. ¶ 15; Wilson Dec. ¶ 15; Skinner Dec. ¶ 15.

Alto employed dispatchers, area supervisors, pharmacy managers, and area managers.  SAC ¶ 96.  Dispatchers assigned delivery routes and kept tabs on couriers during their shifts.  SAC ¶¶ 96-97.  According to Plaintiffs, dispatchers had the power to discipline and terminate

couriers and would threaten termination if a courier did not comply with company rules.  SAC ¶¶ 98-99.  Dispatchers also could and did strip couriers of future shifts if they failed to give sufficient notice of days off or absences.  SAC ¶ 101.

Alto paid couriers a flat hourly rate of $21.50 per hour for all hours worked and treated them as independent contractors.  SAC ¶ 84.  By way of example, Muhammad says she worked 49.18 hours during the workweek of November 14, 2022 to November 21, 2022 but was paid her straight time rate for all hours worked.  SAC ¶ 86.  Plaintiffs Skinner and Wilson also allege they worked over 40 hours a week.  SAC ¶ 87.  None of the Plaintiffs, however, state what their standard overtime hours were each week.  Nor do they state what their regular workdays were.  Only Plaintiff Muhammad specifies a specific workweek in which she worked approximately 9 hours of overtime and one in which she worked 1 hour of overtime.  Thus, the Court is left to guess the number of overtime hours Plaintiffs worked.  Alto states that, based on a review of its When I Work system, most couriers never reported more than 30 hours work in any week. Howard Dec. ¶ 9.  It believes that only 30 couriers recorded 40 or more hours in any week within the relevant period.  *Id.* ¶ 10.

Plaintiffs contend couriers should have been classified as employees because Alto controlled their schedules, assigned their deliveries and routes, monitored their performance and dictated their pay rates.  And, because they routinely worked over 40 hours in a week, they argue they are entitled to an overtime premium for hours worked in excess of 40 each week. Plaintiffs state that they spoke with other couriers regarding their employment status and the fact they did not receive overtime premium pay and that Alto made downward adjustments to

their reported work hours.  Muhammad Dec. ¶¶ 7-8; Wilson Dec. ¶¶ 5, 7-8; Skinner Dec. ¶¶ 5, 7-8.

In addition to failing to pay overtime premiums, Plaintiffs allege that Alto altered couriers' recorded work hours to reduce reported time worked to 40 or fewer hours in a week. Muhammad Dec. ¶ 6; Wilson Dec. ¶ 11.  According to Plaintiffs, Alto's dispatchers and supervisors had direct access to timekeeping software and were authorized to edit clock-in and clock-out times.  Dispatchers and area supervisors assisted couriers in clocking in and out and also adjusted clock-in and clock-out times.  SAC ¶¶ 102-104; Wilson Dec. ¶ 6.  For example, on March 4, 2024, Alto manually adjusted Muhammad's time records to reflect 39.4 hours of work when she actually worked over 41 hours that week.  SAC ¶ 105.  Alto disputes these allegations and contends that it had no access to and could not see courier passwords, and that the system calculated pay based on the exact clock-in and clock-out times recorded by the couriers themselves.  Howard Dec. ¶¶ 6-10.

Customers often paid tips to couriers.  However, Plaintiffs allege that Alto retained between 75-100% of tips earned by couriers, purportedly to distribute them to pharmacy staff and management.  SAC ¶¶ 111-113.  Sometime, managers forced Plaintiffs to provide a portion of their tips to them on threat of not processing payroll on time or accurately.  SAC ¶¶ 115-116. Managers also sometimes forced Plaintiffs to appear at work but then not give them a delivery route and then force them to use a vacation or sick day.  SAC ¶ 117.

Plaintiffs assert that they often worked more than 10 hours in a day and were not allowed meal or rest breaks.  SAC ¶¶ 90, 108-109. They also contend that Alto did not provide couriers with proper wage notices upon hire, as required under NYLL, and that paychecks did

not disclose actual hours worked, preventing them from being able to determine if their time had been shaved and they were being paid properly.  SAC ¶¶ 64-69.

## PROCEDURAL HISTORY

Plaintiffs filed this action on December 30, 2023 and have twice amended their complaint.  Alto brought counterclaims against Plaintiffs for breach of their independent contractor agreements and indemnification on the theory that they should indemnify it for any judgment they obtain in this action, as well as for its attorneys' fees and costs.  CC ¶¶ 1-28. Plaintiffs have not filed an answer to the counterclaims.  Discovery is ongoing.

## LEGAL STANDARD

The FLSA allows employees to maintain an action to recover unpaid wages collectively where the employees are "similarly situated" and file consent in writing to opt into the action. 29 U.S.C. § 216(b).  District courts have discretion to implement Section 216(b) by facilitating notice to potential plaintiffs of the existence of the action and their opportunity to opt in. *Myers v. Hertz Corp*., 624 F.3d 537, 554 (2d Cir. 2010).  The Court of Appeals for the Second Circuit has endorsed a two-step method to certify an opt-in FLSA collective action.  *Id*. at 554-55. At step one, the subject of the current motion, the district court asks whether it is appropriate to send notice to potential opt-in plaintiffs "who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred," thus issuing a "conditional certification" of the collective action.  *Id*. at 555; *see Schwerdtfeger v. Demarchelier Mgmt., Inc*., No. 10-cv-7557, 2011 WL 2207517, at *3 (S.D.N.Y. June 6, 2011) ("Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement.").

At this first stage, plaintiffs need only make a "modest factual showing" that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *See Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).  This is a low burden.  *Id*.  A showing that plaintiffs "were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class" is generally a sufficient basis from which to infer a "common policy" required for conditional certification at this stage.  *Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2015 WL 7076009, at *3, 2015 U.S. Dist. LEXIS 153730, at *9 (S.D.N.Y. Nov. 12, 2015) (citing *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007)).  Documents properly considered in this inquiry include a plaintiff's own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.  *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557-58 (S.D.N.Y. 2013).  In an appropriate case, conditional collective certification may be based solely on the personal observations of one plaintiff.  *See Hernandez v. Bare Burger Dio Inc.*, No. 12-cv-7794 (RWS), 2013 WL 3199292, 2013 U.S. Dist. LEXIS 89254 (S.D.N.Y. June 18, 2013) (granting conditional collective action certification of all tipped employees at a single Bareburger location based on one employee's declaration).  The inquiry is not a merits one; and the court may not "resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations."  *Korenblum v. Citigroup, Inc*., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016).

## DISCUSSION

### *1. Conditional Certification*

In this case, Plaintiffs have satisfied their modest burden to show that they are similarly situated to other couriers/delivery drivers.[3]  Specifically, they each attest that they worked more than 40 hours in a workweek and were all paid a flat rate for all hours worked.  They also state that they each were required to sign an independent contractor agreement even though the terms and conditions of their employment were controlled by Alto.  They also provide copies of the timekeeping policies they were all subject to and the independent contractor agreement they were required to sign that was the basis for their being paid a flat rate for all hours worked.  Alto does not dispute that it treated couriers as independent contractors through July 16, 2024 or that it paid them a flat rate for all hours worked.  Further, it states that at least 30 couriers worked more than 40 hours in a workweek during the relevant time period.  Thus, Plaintiffs have shown they and others were subject to a common policy of paying a flat rate for all hours worked rather than an overtime premium and a common policy of classifying couriers as independent contractors.

Alto argues that the collective "certified" should be limited to the 30 couriers it has identified who worked more than 40 hours in a workweek during the relevant period, citing *Ni v. HSBC Bank USA, N.A.,* 23-cv-00309 (KHP), 2024 U.S. Dist. LEXIS15216, at **20-21

---

[3] Conditional certification should be granted even under a "modest-plus" standard because discovery has revealed there are other couriers who were treated as independent contractors, like Plaintiffs, and who worked more than 40 hours in a workweek without being paid an overtime premium.  *Korenblum*, 195 F. Supp. 3d at 482 (discussing modest-plus standard); *Brown v. Barnes & Noble, Inc.*, 16 Civ. 7333, 2019 WL 5188941 (S.D.N.Y. Oct. 15, 2019) (same).

(S.D.N.Y. Jan. 29, 2024).  In *Ni*, however, the Plaintiffs were personal bankers who were seeking to represent a class of personal bankers and tellers.  Further, there was no evidence that tellers worked more than 40 hours in any week.  Here, Plaintiffs' proposed collective is limited to people who did the same function – couriers.  And, Plaintiffs have attested that they spoke to other unnamed couriers who said they worked more than 40 hours and that Alto adjusted hours downward.  Thus, it is possible there are more than 30 couriers who worked in excess of 40 hours in a workweek and were not paid overtime for those hours.  Accordingly, it is premature at this point to limit the notice to the 30 couriers identified by Alto.

Finally, Plaintiffs propose notice go to anyone who worked as a courier in New York City by Alto for the period January 1, 2021, three years before the filing of the Complaint, to July 16, 2024 (the date the parties agree Alto no longer employed couriers).  Defendants object to the period extending back to January 1, 2021 on the grounds that the statute of limitations period would run from the date any individual opts in to this action and because it contends there is an insufficient basis to apply the three-year statute of limitations applicable to willful violations.

The Court finds that the proposed notice period is appropriate, as Plaintiffs have asserted willfulness, and because courts routinely utilize a three-year look back period from the date of the filing of the complaint when the complaint alleges a willful violation.  *See, e.g.*, *Martinez v. JVA Indus.*, No. 20 CV 7977, 2021 WL 1263133 (S.D.N.Y. April 6, 2021); *Ruiz* v. *Truffa Pizzeria & Wine Room Corp.*, No. 20 CV 8645, 2021 WL 568249 (S.D.N.Y. Feb. 15, 2021); *Hamadou v. Hess Corp.*, 915 F. Sup. 2d 651, 668 (S.D.N.Y. 2013); *Bittencourt v. Ferrara Bakery & Cafe, Inc.,* 310 F.R.D. 106, 110 (S.D.N.Y. 2015) ("When willfulness is disputed, courts typically apply the three-year limitations period"); *Davis v. Abercrombie & Fitch Co.*, No. 08-CV-1859,

10

2008 WL 4702840, at *12 (S.D.N.Y. Oct. 23, 2008) ("Courts that have faced this issue routinely approve a three-year notice period.") (collecting cases). To be sure, Defendants dispute the allegations of a willful violation. However, the Court does not need to resolve the dispute regarding willfulness on this motion. For now, it is merely authorizing notice so that additional individuals may opt-in. Defendants remain free to challenge the applicability of the three-year statute of limitations on a dispositive motion or at trial. Similarly, the Court understands that Defendants may have a statute of limitations defense to certain opt-in plaintiffs' claims. This issue, however, is tied to the issue of equitable tolling, which the Court addresses below. For now, the Court need not address these statute of limitations issues. *Sarikaputar v. Veratip Corp.*, No. 17-CV-00814, 2018 WL 4109348 (S.D.N.Y. Aug. 29, 2018) at 5 (*citing Fasanelli v. Heartland Brewery, Inc*., 516 F. Supp. 2d 317 (S.D.N.Y. 2007)).

In sum, Plaintiffs' motion to conditionally "certify" a collective of individuals who worked as couriers or delivery drivers for Alto in New York City at any time from January 1, 2021 through July 16, 2024 is granted.

### 2. *Equitable Tolling*

Plaintiffs ask for equitable tolling but provide no real argument for it other than that many members of the putative collective no longer work for Alto. Ordinarily, the statute of limitations in an FLSA collective action continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit. 29 U.S.C. § 256(b). However, equitable tolling may be warranted to avoid inequitable circumstances, where plaintiffs have acted with reasonable diligence in pursuing their claims, but where "a substantial number of class members may . . . be time-barred through no fault of

counsel or the class representative." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014).

"Equitable tolling is appropriate only in rare and exceptional circumstances . . . where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Andon v. SDG Props., Inc.*, No. 17-cv-7876 (ALC) (KHP), 2018 WL 3970910 at *3, 2018 U.S. Dist. LEXIS 140913 at *3 (S.D.N.Y. Aug. 20, 2018) (citation and internal quotation omitted).  Because "the application of the equitable tolling standard is 'highly case-specific,' and the 'burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff,'" equitable tolling is generally not appropriate at the conditional certification stage. *Contrera v. Langer*, 278 F. Supp. 3d 702, 726 (S.D.N.Y. 2017) (quoting *Wilder v. U.S. Dep't of Veterans Affairs*, 175 F. Supp. 3d 82, 90 (S.D.N.Y. 2016)).

Plaintiffs fail to allege any exceptional circumstances.  Thus, no equitable tolling will be granted at this time.  Nonetheless, the Court's ruling on this issue is made without prejudice to Plaintiffs' right to resubmit this request after additional discovery and/or facts warrant such an application. *See, e.g.*, *Cuaya v. VI Development Group, LLC*, 2020 WL 5494371, at *13, 2020 U.S. Dist. LEXIS 166324, at *41-42 (S.D.N.Y. Sept. 10, 2020) (denying equitable tolling without prejudice because plaintiff "failed to allege that any potential opt-in plaintiff exists 'who intends to join the collective but who risks becoming time-barred or has been prevented in some extraordinary way from exercising his rights'").

### 3. *Notice and Opt-In Period*

Plaintiffs provide a proposed form of notice with an opt-in form that will need to be modified.  First, the opt-in form does not provide a place for an opt-in plaintiff to consent to the

undersigned's jurisdiction – something that will need to be corrected.  18 U.S.C. § 636(c); Fed. R. Civ. P. 73(a).  Next, the spelling of the undersigned's name needs to be corrected.  Additionally, Alto raises a number of objections to the proposed notice.  Some of these have merit, although others do not.  For example, while the Court understands Defendants' objection to use of the word "employ" or "employment," given that they dispute the claims that couriers were misclassified; however, use of the more generic word "worked" can be used.  Similarly, the proposed notice refers to state law, which is improper because the notice concerns only federal claims under the FLSA.  On the other hand, the Court has concerns about Alto's suggestion that the notice is defective because it does not list defense counsel.  *See Cabrera v. Stephens*, No. 16-CV-3234 (ADS) (SIL), 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("A defense counsel's contact information . . . is likely to create confusion rendering distribution or collection of consent forms less effective."); *Chhab v. Darden Rests., Inc.*, No. 11-CV-8345 (NRB), 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Only plaintiffs' counsel can potentially represent the individuals to whom the notice is mailed, and only they should be privy to certain sensitive information that may otherwise fall within the attorney-client privilege.").  Accordingly, the parties shall meet and confer on a revised proposed notice form, including a summary text notice, and submit a revised proposed notice within two weeks of the date of this Opinion and Order.  The Court suggests the parties review other forms of notice that this Court has approved when fashioning a revised notice.  Additionally, insofar as a courier who did not work more than 40 hours in a workweek would not have a claim to overtime, the Court suggests the parties consider whether the notices and opt-in returns should also ask the opt-in plaintiffs to identify to the extent possible the weeks they contend they worked more than 40 hours.

13

Plaintiffs request a 90-day opt-in period.  The standard opt-in period in this Circuit, following conditional certification, is 60 days.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566-67 (S.D.N.Y. 2015) ("[c]ourts in this Circuit routinely restrict the opt-in period to sixty days") (quoting *Fa Ting Wang v. Empire State Auto Corp.*, No. 14-cv-1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)).  To extend the notice period beyond the typical 60-day timeframe, Plaintiffs need to show the presence of special circumstances warranting such an extension.  *See Yap*, 146 F. Supp. 3d at 566-67 (limiting opt-in period to 60 days where plaintiffs failed to demonstrate "special circumstances" that would warrant a 90-day opt-in period).  Plaintiffs have failed to show any special circumstances.  Therefore, the opt-in period will be 60 days.

Plaintiffs request distribution of the notice by several means, including text message with a summary text message with information about where the full notice can be viewed. They ask this because of the high turnover rate of couriers and because couriers used their phones when delivering medications for Alto, making text distribution of notice reliable.  Courts authorize alternative methods of notice, including text messages, when the facts show that employees and former employees used text messaging and had a high turnover.  *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 14 Civ. 3624, 2015 WL 4240985 (S.D.N.Y. July 13, 2015); *Martin v. Sprint/United Mgmt. Co*., 15 Civ. 5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016).  Here, the Court finds that text distribution is appropriate and directs the parties to meet and confer on the form of a text notice.

### 4. *Class List*

Plaintiffs request that Defendants be ordered to provide contact information for the potential opt-in plaintiffs, including their names, titles, last known phone numbers, addresses, and emails, phone numbers, dates of employment and positions.  Courts in this District routinely allow plaintiffs to receive contact information for potential opt-in plaintiffs, including last known addresses, telephone numbers, and emails.  *See, e.g.*, *Martin*, No. 15-cv-5237 (PAE), 2016 WL 30334, at *19.  Thus, within two weeks of the date of this Opinion and Order, Defendants must produce this information for anyone who worked as a courier or delivery person for Alto in New York from January 1, 2021 through July 16, 2024.

**SO ORDERED**

DATED: May 1, 2025
      New York, New York

                                          Katharine H. Parker
                                          Katharine H. Parker
                                          United States Magistrate Judge