UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Afiyfah Muhammad,<br>Darwin Wilson, and<br>Dominique Skinner,<br>*individually and on behalf of all others*<br>*similarly situated*,<br>　　　　　　　　　　　　　　Plaintiffs,<br><br>　　　-against-<br><br>Alto Pharmacy LLC,<br>　　　　　　　　　　　　　　Defendant. | Civil Action No.<br>1:23-cv-11315 (KHP)<br><br>Declaration of Tyrone A. Blackburn, Esq.<br>In Support of Plaintiffs' Emergency Letter-<br>Motion to Compel and For Sanctions |

I, TYRONE A. BLACKBURN, ESQ., pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury the following to be true and correct:

1. I am the founder of T.A. Blackburn Law, PLLC, counsel of record for Plaintiffs Afiyfah Muhammad, Darwin Wilson, and Dominique Skinner in the above-captioned action. I am admitted to practice before this Court and submit this Declaration in support of Plaintiffs' Emergency Letter-Motion to Compel Defendant Alto Pharmacy LLC ("Alto") to immediately produce all responsive Slack communications and to authorize Slack Technologies, LLC to release the same records to Plaintiffs and for Sanctions.

2. I make this Declaration on personal knowledge and upon review of the files maintained by my firm in this matter. If called as a witness, I could and would competently testify to the matters stated herein.

Overview

3. This action arises out of allegations that Defendant Alto Pharmacy LLC ("Alto") systematically manipulated the time-and-attendance records of its courier workforce in violation of the Fair Labor Standards Act and the New York Labor Law. Plaintiffs allege that Alto managers instructed couriers to "clock out" at the moment of their last delivery — even where additional compensable work remained — as a cost-cutting measure.

4. The central factual dispute concerns internal communications by Alto management, all of which were primarily conducted through Slack.

5. The former Alto Area Manager, Michael DiNicola, testified under oath on May 8, 2026, that "most of the conversations that I had with anybody in the company, including couriers[,] was done through Slack or Onfleet or one of the websites," and that he was "told to make sure that the punch-out, the clock-out matched the last delivery."

6. On the record, my co-counsel and I expressly reserved a supplemental request for all Slack communications between Amy Stoute, Josh Howard, and Mr. DiNicola regarding time-and-attendance instructions. A true and correct copy of the DiNicola Deposition Designation is attached as **Exhibit K**.

Discovery Timeline

7. On January 2, 2026, my firm served a subpoena duces tecum on Slack Technologies, LLC, with a return date of February 16, 2026, seeking communications relating to the Plaintiffs wage theft claims.

8. A true and correct copy of the Slack subpoena and cover letter is attached as **Exhibit A**. The same day, my firm served a parallel subpoena on When I Work, Inc., attached as **Exhibit B**.

1

9. Between January 6 and January 13, 2026, Alto's counsel, Lauren B. Grassotti, Esq. of Jackson Lewis P.C., requested that Plaintiffs place the third-party subpoenas on hold and represented that Alto would self-produce the responsive documents directly.

10. Plaintiffs agreed in reliance on that representation. A true and correct copy of the meet-and-confer email chain is attached as **Exhibit C**.

11. Alto did not produce the promised Slack communications.

12. On May 14, 2026, my firm served a renewed subpoena on Slack Technologies, LLC.

13. Personal service was effected on Cordelia Fowler, an agent authorized to accept service, at Slack's San Francisco office (415 Mission Street) at 11:30 a.m. on May 20, 2026. A true and correct copy of the renewed subpoena with Attachment A and the Affidavit of Service is attached as **Exhibit D**.

14. On May 21, 2026, Slack — through its counsel Sarah G. Herr, Esq. — served written objections invoking Slack's obligations under the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*, and directing Plaintiffs to obtain Alto's consent.

15. Slack's original and supplemental letters are attached as **Exhibit E**. The same-day email exchange with Ms. Herr, confirming that Slack would not produce absent Alto's authorization, is attached as **Exhibit F**.

16. On June 30, 2026, my firm circulated a detailed email to Alto's counsel identifying the outstanding Slack production and Alto's prior representations.

17. Alto responded through Ms. Grassotti on the same date, and on July 1, 2026, the parties filed a joint status letter reflecting Alto's renewed commitment to produce. The June 30 email thread and Ms. Grassotti's reply are attached as **Exhibit G**.

18. Alto again failed to produce. On July 11, 2026, I sent Alto's counsel a First Discovery Deficiency Letter identifying the specific outstanding items.

19. On July 28, 2026, after receiving no substantive response, I sent a Second Discovery Deficiency Letter, followed the same evening by an email confirming that Plaintiffs intended to seek Court intervention absent immediate compliance. The July 28 letter and email are attached as **Exhibit H**.

20. On July 29, 2026, Ms. Grassotti, held an in-person meet-and-confer at Jackson Lewis P.C.'s New York office at the conclusion of the deposition of named Plaintiff, Darwin Wilson.

21. During that conversation, Ms. Grassotti candidly acknowledged that Alto had in its possession thousands of pages of responsive Slack communications, and she displayed to me a printed excerpt of a Slack channel with portions highlighted in yellow.

22. Ms. Grassotti then stated, in substance, that her employer will not authorize IT to build a platform where the responsive Slack documents could be filtered, organized and transmitted to Plaintiffs.

23. She then expressed her frustration with her firms IT department and stated that it would be much easier if Slack could produce the documents directly, and that her client would approve Slack to provide the requested documents because it would be more cost effective for them.

24. I offered to reach out to Slacks counsel Sarah G. Herr, Esq. with Ms. Grassotti on the e-mail.

25. Following that impasse, I initiated direct communications with Slack's counsel, Ms. Herr. On August 4, 2026, Ms. Herr provided Slack's standard Authorization for Corporate Export Enablement (blank). True and correct copy are attached as **Exhibit J**.

26. Ms. Herr advised that Slack could execute a workspace-level export only upon receipt of a signed authorization from Alto identifying its workspace domain; Slack's systems, she explained, cannot search by individual employee name or ID.

27. Between August 4 and August 12, 2026, I sent multiple emails to Ms. Grassotti and Mr. Mass forwarding Slack's authorization form.  I even completed Slacks authorization form, and requested that either Ms. Grassotti, Mr. Mass or their client execute it and return it to Ms. Herr so she could release the responsive documents.

28. Ms. Grassotti and Mr. Mass did not respond for **eight days**.

29. On August 11, 2026, at approximately 6:03 p.m., Ms. Grassotti finally replied, purporting to unilaterally narrow the scope of any authorization to communications between Mr. DiNicola and named opt-in plaintiffs only.

30. On August 12, 2026, Ms. Grassotti disclaimed any prior Court directive to produce and completely ignored all of the representations she made to Plaintiffs' counsel where she consistently guaranteed compliance. The August 4–12 email chain is attached as **Exhibit I**.

31. Ms. Grassotti's proposed narrowing directly contradicts Mr. DiNicola's sworn testimony.

32. The relevant communications include those between and among Alto managers Amy Stoute, Josh Howard, Alan Wade, Jae Gilliard, La'Tasha Flowers-McAdams, a manager identified only as "Joe," and Mr. DiNicola concerning the direction to synchronize clock-outs with deliveries.

33. Restricting production to DiNicola-to-opt-in communications would exclude precisely the manager-to-manager communications that are most probative of Alto's liability.

Prejudice, Diligence, and Requested Relief

34. Plaintiffs have exercised diligence at every stage — issuing subpoenas, agreeing to Alto's requested hold in reliance on its promise to self-produce, re-issuing subpoenas when that promise proved empty, sending detailed deficiency letters, appearing in person to meet and confer, and coordinating directly with Slack's counsel to remove logistical obstacles.

35. Alto has responded with silence, shifting positions, and — most recently — unilateral narrowing that contradicts sworn testimony.

36. The prejudice to Plaintiffs is acute. Fact discovery is nearing its close and the pending collective-conditional-certification briefing turns on precisely the Slack communications Alto refuses to release.

37. Absent immediate intervention, Plaintiffs will be forced to depose Ms. Stoute, Mr. Howard, and other Alto managers without the documents necessary to test their testimony.

38. For the reasons set forth in the accompanying letter-motion, Plaintiffs respectfully request that the Court enter an order:
    1) compelling Alto to sign Slack's Authorization for Corporate Export Enablement and to identify its workspace domain within 24 hours;
    2) directing Slack to produce the responsive communications on the terms of Plaintiffs' May 14, 2026, subpoena;
    3) awarding Plaintiffs their reasonable fees and costs under Rule 37(a)(5); and
    4) providing that continued noncompliance will result in an adverse-inference instruction and further sanctions under Rule 37(b)(2)(A).

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 12, 2026, at Brooklyn, New York.

*/s/ Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.

3